IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JIMMIE FOXWORTH,                          §
                                         §
        *Plaintiff*,                      §
                                         §
v.                                        §        CIVIL ACTION NO. H-07-3944
                                         §
ABBAS KHOSHDEL, ET AL.,                   §
                                         §
        *Defendants*.                     §

## MEMORANDUM OPINION AND ORDER

Plaintiff Jimmie Foxworth, a state inmate proceeding *pro se* and *in forma pauperis*, filed this section 1983 lawsuit complaining that defendants denied him dentures. Defendants filed an amended motion for summary judgment (Docket Entry No. 25), to which plaintiff responded. (Docket Entry No. 29.)

After carefully reviewing the pleadings, the motion and response, the record, and the applicable law, the Court GRANTS the motion for summary judgment and dismisses this case with prejudice.

*Factual Background and Claims*

Plaintiff claims that defendants, Abbas Khoshdel, M.D., and David Seals, D.D.S., were deliberately indifferent to his serious medical needs by denying him dentures.[1] Plaintiff

---

[1]Plaintiff referenced "unnamed medical providers" in his complaint. He did not subsequently identify and name these providers, and they were not served with process. Consequently, only the two named defendants are before the Court.

further asserts that, by denying him dentures, defendants subjected him to a state-created danger in violation of the Fourteenth Amendment. He also claims in general terms that the prison policy under which he was denied dentures is unconstitutional. He seeks a declaratory judgment with recovery of actual and punitive damages, and an injunction ordering defendants to provide him dentures.

Defendants move for summary judgment, and argue that plaintiff did not meet prison policy requirements for dentures; that they were not deliberately indifferent to any serious health, safety, or medical needs of plaintiff; that their actions were objectively reasonable; and that they are entitled to qualified immunity. Defendants further argue that they have no authority to provide plaintiff with dentures if injunctive relief were granted, and that the prison denture policy is not unconstitutional.

*Summary Judgment Standards*

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding a motion for summary judgment, the district court must determine whether the pleadings and records indicate if there is a genuine issue regarding any material fact and whether the moving party is entitled to judgment as a matter of law. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue. *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). To meet this burden, the movant must present evidence that shows that the non-movant cannot carry its burden of proof at trial. *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). The movant may accomplish this by showing that the non-moving party has presented no evidence in support of his claim. *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Once the movant has met this burden, the burden shifts to the non-movant to present specific facts showing that there is a genuine issue for trial; otherwise, summary judgment will be entered in favor of the movant. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

*Factual Analysis*

The record shows that, when plaintiff entered the prison system in 2004, he had no teeth in his upper jaw and only six or seven teeth in his lower jaw. These teeth were in poor condition and showed evidence of periodontal disease. (Docket Entry No. 26, Exhibit B.) Plaintiff weighed 191 pounds and was reported to have a body mass index (BMI) of 28, which falls in the "overweight" range. *Id*. Plaintiff's pre-incarceration medical history included heart problems, high blood pressure, lower gastrointestinal problems, gastritis and duodenitis, and osteoporosis. *Id*., Exhibits A, B, E.

During his incarceration, defendants examined and treated plaintiff for various ailments, including high blood pressure, gastrointestinal conditions, tooth caries, and gum

3

disease.  Because plaintiff's remaining teeth were so extensively damaged when he entered

the prison system and were causing him pain and discomfort, plaintiff requested that they be

extracted.  *Id*., Exhibit E, pp. 11-12.  Following the extraction of his remaining teeth, plaintiff

complained that, without dentures, he could not eat regular prison food, and that the soft food

diet prescribed by defendants gave him chronic diarrhea and other gastrointestinal

discomforts.  He further complained that chewing prison food without teeth or dentures was

"cutting up" his gums and mouth, causing constant pain.  Plaintiff requested dentures, but

was informed that he was not eligible for dentures under applicable UTMB Correctional

Managed Care ("UTMB-CMC") policies.

In her affidavit submitted in support of the motion for summary judgment, Betty J.

Williams, M.D., testified in relevant part as follows:

> Offender Foxworth alleges that UTMB-CMC Medical and Dental
> Professionals treated him with 'deliberate indifference' and violated his
> constitutional rights by declining to provide him with dentures on his most
> current admission to TDCJ.
>
> Foxworth was admitted to TDCJ in June 2004.  As part of the intake process,
> each offender receives a dental screening exam.  On June 28, 2004, Foxworth
> was examined by [a prison dentist].  He was noted to have only 6 bottom
> incisors present and in very poor condition, the rest of his mouth was
> edentulous (without teeth).  There is no mention of the patient having any
> existing bridge or dentures.  His admission medical screening that same day
> documented the offender to be 69.5 inches tall, weighing 188 [pounds] and
> was described as 'well nourished.'  This corresponds to a BMI [of] 28, or
> 'Overweight.'  Lab work done at the time of his admission confirmed a Serum
> Albumin [of] 3.8 and [hemoglobin of] 16.0 – both of which confirm a good
> nutritional status, despite the offender's poor dentition.

4

On 5/30/06 Foxworth underwent extraction of one of his remaining decayed lower incisors by Dr. Seals. At that time the offender remarked that he'd 'like to get the rest of the (decayed) teeth removed.['] He returned to the Dental Clinic on 7/2/06 for extraction of the remaining teeth by Dr. Seals.

On September 7, 2006, offender presented to Medical Clinic, seeking justification for dentures. He was examined by Dr. Khoshdel, who noted that the offender's weight [was] 189 (unchanged from previous) and that there was therefore no medical necessity for dentures.

On October 10, 2006, the offender presented to the dental clinic wanting dentures. At that time, he was advised of current UTMB-CMC policy in which 'Dental prosthodontics (i.e., dentures) are provided only when medically necessary. Most foods are quite easily digested with minimal mastication (chewing) and there is little likelihood that dentures will help a pre-existing GI problem.' It should be noted that the prison diet consists largely of cooked vegetables, ground meat and eggs, canned fruit, bread and pasta – all of which cab be ingested with minimal chewing. Crisp raw vegetables, fruits, steaks and chops are not part of the TDCJ diet. Edentulous patients usually do quite well eating on the regular chow line, rarely requiring a 'pureed diet.'

Furthermore, it was noted that, since removal of the remaining teeth, the offender has actually increased his weight by 5 [pounds] (189-194) and BMI score by 1 (28-29) 'Overweight.' Foxworth was advised that there was no medical necessity for dentures.

Foxworth has been seen in clinic regularly for other complaints. Weights recorded from July 2006, when his remaining teeth were extracted demonstrate that the offender continues to gain weight steadily. Most recent weight on 2/14/08 [was] 195 [pounds] (BMI = 29/Overweight)[.] Recent labs show Serum Albumin [of] 4.2 and [hemoglobin of] 17.0, both of which are consistent with normal nutritional status.

In summary, Foxworth has received timely and appropriate care from his Dental and Medical Providers. Although he has been edentulous for over two years, there is no physical or laboratory evidence of impaired nutritional status. In my opinion there is no medical necessity at this time for dentures.

(Docket Entry No. 26, Exhibit A.)

In his affidavit submitted in support of the motion for summary judgment, Jerry Toole, D.D.S., a dental surgeon, District Dental Director for the UTMB-CMC, and Chairman of the Dental Utilization Quality Review Committee for UTMB-CMC, explained the UTMB-CMC Dental Policy and Procedures and their application to plaintiff:

> UTMB-CMC Dental Policy and Procedures provides for the provision of dental prosthetics to offender patients with compromised masticatory function when the health of the offender would be adversely affected (Dental Policies E-36.1, E-36.4). [P]rostheses provided under this policy are termed 'medically necessary.' Provision of dental prostheses based on 'medical necessity' became effective by dental directive dated March 7, 2003 and by policy on September 1, 2003.
>
> Eligibility for medically necessary dental prosthetics is determined by the attending physician and dentist. The nutritional status of a patient having compromised masticatory function is monitored by tracking weight trends. A review of the body mass index (BMI) is utilized as a tracking methodology. A BMI of 18.5 to 25 is considered normal. A patient with a BMI of 25 or lower which is trending downward, or a patient 10% or more underweight relative to his ideal body weight is referred to the patient's treating physician by the attending dentist for evaluation.
>
> If the patient's physician determines that the patient's nutritional status is compromised, special diets such as the mechanically blended diet or high protein liquid diet are considered. Patients should be compliant with all dietary recommendations.
>
> Patients not responding to dietary intervention are referred to the UTMB Dental Utilization Quality Review Committee (DUQRC) to determine eligibility for medically necessary dental prosthetics. Referrals to the Committee are made utilizing the 'medically necessary Dental Prosthetics Referral form.' The DUQRC is composed of the District Dental Directors and Dental Speciality Coordinators as assigned by the Dental Director (UTMB Policy E.36.5). [R]eferrals not approved by the DUQRC are automatically referred to an Appeals Committee for consideration.
> A review of the Plaintiff's medical/dental health record demonstrated that Mr. Foxworth was provided a standard of dental care that was consistent with The

University of Texas Medical Branch Correctional Managed Care Dental Policies and Procedures.

*   *   *   *

Dentures were not prescribed [for plaintiff] as the patient's nutritional status and medical conditions did not satisfy the eligibility requirements of 'medical necessity' as outlined by the UTMB/CMC Dental Policy. The patient's weight and BMI have remained stable during his incarceration. The patient's other medical conditions were appropriately managed by medical personnel.

*Id.*, Exhibit B.

Plaintiff's medical records show that on October 10, 2006, he complained to Dr. Seals that, "I need dentures to eat with. I'm not going to eat a mechanically blended diet or take Ensure the whole time I'm in prison." (Docket Entry No. 19, Exhibit C, p. 7.) Seals examined plaintiff, but found no indications that dentures were medically necessary. *Id.* Dr. Khoshdel examined plaintiff on September 7, 2006, and found that dentures were not medically necessary. *Id.*, p. 22. Plaintiff again saw Dr. Seals on November 19, 2007, but was advised that the denture policy had not changed. Plaintiff had continued to gain weight, and weighed 207 pounds at the November 19th appointment. *Id.*, p. 35. Dentures were again found medically unnecessary, and this lawsuit ensued.

The dental policy at issue in this case, "Dental Prosthodontic Services," Number E-36.4 of the Correctional Managed Health Care Policy Manual, became effective in September 2003, and provides, in relevant part, as follows:

7

1.      MEDICALLY NECESSARY PROSTHODONTICS

    A.      Dental prosthetics are provided when the heath of the patient would otherwise be adversely affected.

    B.      Nutritional Status

        1.      Dentists should thoroughly review the patient's medical history. Nutritional supervision is a critical component of the management of patients with chronic diseases such as heart disease, cancer, or diabetes.

        2.      Dentists should monitor the nutritional status of patients by tracking weight trends for those who may have compromised [chewing] function.  A review of the Body Mass Index (BMI) may be utilized as a tracking methodology.

            *   *   *   *

        The BMI should be reviewed for those patients who are [without teeth], essentially [without teeth], or who have fewer than seven occluding posterior teeth and have complaints regarding [chewing].

        b.      A BMI from 18.5 to 25 is considered normal.  Patients with a BMI of 25 or lower which is trending downward or a patient 10% or more underweight relative to their ideal body weight should be referred to the patient's treating physician for consultation.

        c.      If the patient's physician determines that the patient's nutritional status is compromised, special diets such as a mechanically blended diet should be considered. Patients should be compliant with all diet recommendations.

    C.      Dental prostheses for those patients with compromised [chewing] function should also be considered following initiation and follow-up of the effectiveness of the special diet.

8

D.                        *    *    *    *

It should be kept in mind, however, that most foods are quite easily
digested with minimal [chewing] and there is little likelihood that
dentures will ameliorate pre-existing gastro-intestinal problems
according to current dental literature.

(Docket Entry No. 26, Exhibit D.)

*Legal Analysis*

*Claim for State-Created Danger*

Plaintiff claims that defendants' refusal to provide him dentures constitutes a state-
created danger to his health and well-being.  As recently confirmed by the Fifth Circuit Court
of Appeals in *Hale v. Bexar County*, 2009 WL 2222833 (5th Cir. 2009) (not designated for
publication), the Fifth Circuit has never expressly accepted the state-created danger theory
that a due process violation can be found if a state created or increased the danger to a
plaintiff and acted with deliberate indifference.  *See Beltran v. City of El Paso*, 367 F.3d
299, 307 (5th Cir. 2004) ("This court has consistently refused to recognize a 'state-created
danger' theory of section 1983 liability.").  Because plaintiff's claim for a state-created
danger fails to state a claim under which relief may be granted, defendants are entitled to
summary judgment dismissal of the claim.

*Claims for Monetary Damages*

A.    Official Capacity

Defendants move for summary judgment on plaintiff's claims against them in their
official capacity on grounds that they are immune from such relief under the Eleventh

9

Amendment. Plaintiff's claims for monetary damages against defendants in their official capacity as employees of the State of Texas are barred by the Eleventh Amendment, and these claims are dismissed. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Oliver v. Scott*, 276 F.3d 736, 742, 742 (5th Cir. 2002).

B.   Individual Capacity

Defendants contend that they are entitled to qualified immunity from plaintiff's claims for monetary damages against them in their individual capacity. Qualified immunity shields government officials performing discretionary functions from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Whether a defendant asserting qualified immunity may be personally liable turns on the objective legal reasonableness of a defendant's actions assessed in light of clearly established law. *Fraire v. City of Arlington*, 957 F.2d 1268, 1272 (5th Cir. 1992).

The threshold inquiry a court must undertake in a qualified immunity analysis is whether a plaintiff's allegations, if true, establish a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiry concerning qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201, 121 (2001). If the allegations establish a constitutional violation, however, the court then considers whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person

10

would have known.  *Hope*, 536 U.S. at 739.  When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense.  *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002).

The Supreme Court has recently modified *Saucier* with respect to these two sequential steps for determining qualified immunity.  In *Pearson v. Callahan*, 555 U.S. __, __, 129 S. Ct. 808, 818 (2009), the Court held that the sequencing of these two steps is no longer mandatory.  The Court held that "experience supports our present determination that a mandatory, two-step rule for resolving all qualified immunity claims should not be retained." *Id.* at 817.  The Court went on to hold that, "while the sequence set forth in [*Saucier*] is often appropriate, it should no longer be regarded as mandatory.  The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818.  The Court noted that the *Saucier* procedure sometimes unnecessarily "results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." *Id.*

Thus, *Pearson* allows this Court to determine defendants' entitlement to qualified immunity without first addressing whether plaintiff's constitutional rights were violated.  In the instant case, the applicable policy regarding dental prosthodontic services provides for dentures only when medically necessary as determined by the inmate's weight, body mass, and nutritional status.  Plaintiff does not dispute that his medical providers denied him

11

dentures as "not medically necessary," and there is no probative summary judgment evidence that defendants did not follow the established written policy.

Defendants in this case are entitled to qualified immunity because they did not engage in conduct that violated a constitutional right that was clearly established at the pertinent times in this lawsuit; that is, the competent summary judgment evidence does not support a conclusion that defendants' conduct was objectively unreasonable in light of the legal rules that were clearly established at the time of their actions. There is no case law in this Circuit requiring prison officials to provide dentures to inmates who ask for them, nor has the Fifth Circuit found unconstitutional the policy under which defendants acted. The failure of defendants to provide plaintiff dentures cannot be viewed as objectively unreasonable in light of their professional judgment that dentures were not medically necessary.

Accordingly, plaintiff fails to show that defendants are not entitled to qualified immunity on his Eighth Amendment claims against them for monetary damages. Defendants' motion for summary judgment is granted as to these claims.

*Claim for Injunctive Relief*

Plaintiff requests the Court to order defendants to provide him dentures, despite their professional judgment that dentures were not medically necessary. Defendants are not entitled to dismissal of this claim based on qualified immunity, as qualified immunity does not protect them from requests for injunctive relief. *See Williams v. Ballard,* 466 F.3d 330, 334 (5th Cir. 2006), *citing Orellana v. Kyle,* 65 F.3d 29, 33 (5th Cir. 1995). Accordingly,

the Court must consider whether defendants are entitled to summary judgment dismissal of plaintiff's request for an injunction ordering defendants to provide him dentures.

To obtain injunctive relief from the state or state employees acting in their official capacity, a plaintiff must prove a deprivation of his constitutional rights pursuant to an official state policy. *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985); *Grandstaff v. City of Borger*, 767 F.2d 161, 169 (5th Cir. 1985). Thus, this Court must consider whether denial of dentures pursuant to the UTMB-CMC policy violated plaintiff's right to be free from cruel and unusual punishment. For purposes of this consideration, plaintiff contends that defendants' decision that dentures were not medically necessary constituted deliberate indifference to his serious medical need for dentures.

The Eighth Amendment's prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A plaintiff must prove objectively that he was exposed to a substantial risk of serious harm, and that prison officials acted or failed to act with deliberate indifference to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the prison officials were actually aware of the risk, yet consciously disregarded it. *Id.* at 837, 839.

The Court is cognizant of defendants' arguments and evidence that plaintiff experienced no weight loss during the chronology of his complaints; indeed, the records reflect that, despite his lack of teeth and allegations of eating difficulties, plaintiff steadily

13

*gained* weight following the removal of his remaining teeth.  However, plaintiff's apparently

adequate nutritional status does not end this Court's consideration of his Eighth Amendment

claim, as plaintiff's primary complaint is that chewing prison food without teeth or dentures

injures his gums and mouth and causes pain.

Plaintiff's medical records show that defendants or other medical care providers

investigated plaintiff's medical complaints of oral injuries, and, upon physical examination,

found no objective support for his complaints.  On September 1, 2006, plaintiff's medical

care provider examined him regarding his request for dentures, but found no objective

medical condition.  *Id*., p. 21.  On September 7, 2006, Dr. Khoshdel examined plaintiff and

found that he had no oral lesions.  *Id*., p. 22.  Dr. Khoshdel noted on September 13, 2006,

that plaintiff had no medical indication for dentures.  *Id*., pp. 23-24.  On October 9, 2006,

plaintiff complained to Dr. Seals that he could not chew his food and needed dentures.  *Id*.,

p. 25.  Dr. Seals examined plaintiff the next day, and reported in his medical chart that

plaintiff stated, "I need dentures to eat with.  I'm not going to eat a mechanically blended diet

or take Ensure the whole time I'm in prison."  *Id*., p. 26.  Dr. Seals noted that, upon physical

examination, there was "no tissue abuse to the edentulous ridges," and that no treatment was

necessary.  He concluded that "No 'dental necessary' condition exists to warrant denture

construction at this time."  *Id*.  Plaintiff was examined for complaints of chest pain on

October 4, 2007.  *Id*., p. 30.  He complained of blood in his urine in October 2007, but the

problem resolved with a change in his medications.  *Id*., p. 32.  He returned to Dr. Seals on

November 19, 2007, to ask if the denture policy had changed.  Dr. Seals re-examined plaintiff, and noted that "no dental pathology exists to warrant construction" of dentures.  *Id.*, p. 35.  No dental treatment was indicated or undertaken at that time.  A review of the medical records presented to this Court fails to reveal that plaintiff complained to defendants of oral pain, or that upon physical examination, he was found to have any evidence of oral damage caused by chewing.  Nor is there any probative summary judgment evidence in the record supporting plaintiff's assertion that his lack of dentures subjects him to a substantial risk of choking or "other gastro-intestinal maladies."  (Docket Entry No. 29, p. 12.)

Plaintiff has been seen and evaluated by medical staff on multiple occasions, and, in the professional judgment of his medical care providers, his medical condition does not warrant the provision of dentures as "medically necessary."  Although plaintiff asserts in his complaint that chewing prison food without teeth or dentures causes cuts and other damage to his gums and mouth, the competent summary judgment evidence fails to reveal objective medical findings verifying such damage. The medical records contained in the summary judgment evidence wholly fail to support plaintiff's contention that he has suffered adverse conditions as a result of not having dentures, and no deliberate indifference is shown.

The fact that plaintiff may disagree with defendants' conclusions regarding his lack of need for dentures is not proof of deliberate indifference.  The Fifth Circuit has held repeatedly that mere disagreement with medical treatment does not state a claim for deliberate indifference to serious medical needs under the Eighth Amendment. *See Stewart*

15

*v. Murphy,* 174 F.3d 530, 535 (5th Cir.1999); *Norton v. Dimazana,* 122 F.3d 286, 292 (5th Cir.1997); *Spears v. McCotter,* 766 F.2d 179, 181 (5th Cir.1985).  Plaintiff does not allege or show that he was refused care or that the defendants intentionally treated him incorrectly with wanton disregard for his medical condition.  *See Domino,* 239 F.3d at 756.  Nor does this Court's review of the record and competent evidence reveal such circumstances.

The Court understands plaintiff's frustration with his inability to obtain dentures while incarcerated, but he is not entitled to injunctive relief under the facts of this case. Defendants' motion for summary judgment is granted as to plaintiff's claim for injunctive relief.

*Unconstitutional Prison Policy*

Plaintiff claims that a policy that allows an unconstitutional act is itself unconstitutional, citing *Huffman v. Linthicum*, 265 F. App'x 162 (5th Cir. 2008) (not designated for publication).  Plaintiff states that, because application of the UTMB-CMC dental policy has caused him to suffer physical injuries to his gums and mouth, application of the policy to deny him dentures violates his Eighth Amendment right to be free of cruel and unusual punishment.  He further contends that the policy is facially unconstitutional due to vagueness, and because the policy "will always lead to a situation in which a toothless prisoner will suffer physical injuries" by attempting to chew prison food.  (Docket Entry No. 29, pp. 5-6.)  Because these latter two claims are based solely on plaintiff's conclusory allegations and are unsupported by probative summary judgment evidence, defendants are

16

entitled to summary judgment dismissal of plaintiff's claim of a facially unconstitutional dental policy.

The Court has already noted that plaintiff's allegations of painful physical injuries to his gums and mouth are unsupported by objective findings in his medical records.  To the contrary, his medical care providers physically examined him and found no evidence that chewing food had caused plaintiff any physical trauma or injury to his gums or mouth.  Nor has this Court found probative summary judgment evidence that defendants were deliberately indifferent to plaintiff's serious medical needs in denying his request for dentures.  In short, plaintiff fails to show that application of the dental policy violated his constitutional rights. Defendants are entitled to summary judgment dismissing plaintiff's claims that application of the dental policy violated his Eighth Amendment protections.

*Conclusion*

For these reasons, the Court GRANTS the amended motion for summary judgment (Docket Entry No. 25), and DISMISSES this lawsuit with prejudice.  Any and all pending motions are DENIED AS MOOT.

The Clerk will provide a copy of this order to the parties.

Signed at Houston, Texas, on September 28, 2009.

_____
Gray H. Miller
United States District Judge

17